IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as the President of the United States of America, *et al.*, <br><br> *Defendants*. | No.  4:21-cv-01329 |

### PLAINTIFF STATES' MEMORANDUM IN SUPPORT OF
### MOTION TO LIFT THE STAY OF THE DISTRICT COURT PROCEEDINGS

Plaintiffs, the States of Missouri, Nebraska, Arkansas, Kansas, Iowa, Wyoming, Alaska, South Dakota, North Dakota, and New Hampshire, brought this action to challenge the Centers for Medicare and Medicaid Services' ("CMS") Interim Final Rule with Comment Period ("IFC") entitled "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination." 86 Fed. Reg. 61,555 (Nov. 5, 2021).  That IFC, also referred to as the "CMS vaccine mandate," imposes an unprecedented federal vaccine mandate on nearly every full-time employee, part-time employee, volunteer, and contractor working at a wide range of healthcare facilities receiving Medicaid or Medicaid funding.

Soon after this suit began, this Court preliminarily enjoined the CMS vaccine mandate in the Plaintiff States.  After Defendants filed a consent motion to stay further district court proceedings, this Court issued an order staying "[f]urther proceedings in this Court . . . during the pendency of Defendants' appeal of the preliminary injunction order or until otherwise ordered by the Court." Doc. 40, at 2.  A few weeks later, the Supreme Court stayed this Court's preliminary injunction;

CMS reinstituted its vaccine mandate in the Plaintiff States; and the States filed an Amended Complaint adding new arguments and claims while also reasserting their original claims.

Given these significant changes in material circumstances, the Plaintiff States now ask this Court to lift the stay on district court proceedings. Without the preliminary injunction in effect, the CMS vaccine mandate is imposing ongoing harm on the Plaintiff States and their citizens (including by forcing the closure of critical healthcare facilities), and the States want to seek relief from this Court.

## BACKGROUND

On November 29, 2021, this Court preliminarily enjoined the CMS vaccine mandate in the Plaintiff States. *See* Doc. 28. The next day, November 30, 2021, Defendants appealed that order to the Eighth Circuit. *See* Doc. 29. Defendants also asked the Eighth Circuit to stay the injunction pending appeal, but on December 13, 2021, the Court of Appeals denied that request.

On December 22, 2021, while that preliminary injunction was in effect, Defendants filed a motion "to stay further proceedings in the district court during the pendency of the Defendants' appeal of this Court's order granting the Plaintiffs' motion for a preliminary injunction." Doc. 39, at 1. Because the preliminary injunction was then in effect, the Plaintiff States consented to that request. *Id.* That same day, this Court ordered that "[f]urther proceedings in this Court shall be stayed in this case during the pendency of Defendants' appeal of the preliminary injunction order or until otherwise ordered by the Court." Doc. 40, at 2.

On January 13, 2022, the Supreme Court stayed this Court's preliminary injunction. *Biden v. Missouri*, 142 S. Ct. 647, 651 (2022) (per curiam). The Supreme Court's stay opinion made a preliminary assessment of the merits and concluded that the States were not likely to succeed on their claims that the IFC exceeded CMS's statutory authority, that the IFC is arbitrary and

2

capricious based on the factors assessed in this Court's preliminary injunction ruling, and that CMS was required to provide notice and comment before issuing the IFC. *Id.* at 652–54; *see also Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("The stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*."). The Supreme Court did not address any of the States' constitutional claims, and it did not address circumstances pertaining to the recent rise of the Omicron variant.

The following day, January 14, 2022, CMS resumed enforcement of its vaccine mandate in the Plaintiff States. CMS, *Guidance for the Interim Final Rule – Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination* (Jan. 14, 2022), https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted.pdf. The agency ordered that healthcare workers must receive the first dose of a COVID-19 vaccine by February 14, 2022, and be fully vaccinated by March 15, 2022. *Id.*

On February 23, 2022, the Plaintiff States filed an Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1) because Defendants have yet to file "a responsive pleading" or "a motion under [Fed. R. Civ. P.] 12(b), (e), or (f)" in this case. *See* Doc. 42. In that Amended Complaint, the States reasserted the allegations and claims in their original complaint, including their constitutional challenges to the IFC, which no court has yet addressed in this case. They also added new factual allegations, some of which arose before this suit began and some of which arose later. Those allegations primarily concern the IFC's focus on the Delta variant and the available COVID-19 vaccines' alleged effectiveness at stopping its transmission, *see id.* at ¶¶ 135–36; important information that CMS knew when it issued the IFC, *see id.* at ¶¶ 156–60; key data about the Omicron variant, *see id.* at ¶¶ 161–72; recent developments showing the burden that the vaccine mandate is imposing (including the closure of some healthcare facilities in the Plaintiff States), *see*

3

*id.* at ¶¶ 173–85; and other supplemental harms to the Plaintiff States and their citizens, *see id.* at ¶¶ 197–204, 211, 214.  In addition, the Amended Complaint includes more reasons why the CMS vaccine mandate is arbitrary and capricious, which no court has yet addressed, *see id.* at ¶¶ 242–50; and why the mandate failed to comply with procedural rulemaking requirements, including the obligation to consult with appropriate state agencies, *see id.* at ¶¶ 278–80, 289–91, 299.  Lastly, the Amended Complaint adds two new causes of action that have yet to be addressed: a violation of the nondelegation doctrine and a changed-circumstances claim.  *See id.* at ¶¶ 334–49.

Along with the Amended Complaint, the Plaintiff States filed their Motion to Lift the Stay of the District Court Proceedings.

**ARGUMENT**

"[T]he power to stay proceedings"—and the corresponding authority to lift stays already imposed—"is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  A district court thus has "the inherent power" to grant or lift stays "in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." *Contracting Nw., Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983).

Whether to grant or lift a stay "calls for the exercise of judgment" that includes "weigh[ing] competing interests." *Landis*, 299 U.S. at 254–55.  More specifically, courts should assess "the potential prejudice or hardship to the parties" and "the interest of judicial economy." *Seefeldt v. Ent. Consulting Int'l, LLC.*, 441 F. Supp. 3d 775, 779 (E.D. Mo. 2020) (quoting *St. Louis Heart Ctr., Inc. v. Athenahealth, Inc.*, 4:15-cv-01215-AGF, 2015 WL 6777873 at *5 (E.D. Mo. Nov. 4, 2015)).  Those factors all weigh decidedly in favor of lifting the stay.

1. The Plaintiff States will be prejudiced if the stay is not lifted. They and their citizens are experiencing ongoing harm now that the Supreme Court has stayed this Court's preliminary injunction and the vaccine mandate has begun to take effect in the Plaintiff States. This harm includes the closure of desperately needed healthcare facilities. For example, since CMS announced on January 14, 2022, that the deadline for the first vaccine doses in the Plaintiff States would be February 14, 2022, the Missouri Department of Health and Senior Services has received closure plans from three long-term-care facilities. Doc. 42, at ¶ 179. One of those facilities has already closed, and its residents have been displaced. *Id.* In addition, the State of Nebraska received notice on January 13, 2022—the day of the Supreme Court's ruling—that a skilled nursing facility in rural Hooper, Nebraska will be closing in March 2022 because of staffing issues, and Nebraska received notice on February 22, 2022, that another nursing facility in Mullen, Nebraska will be closing in April 2022 because of the increasing challenges of operating a nursing facility in a small rural area. *Id.* at ¶ 180. The Plaintiff States and their citizens need relief soon before the crisis get any worse.

The Supreme Court's stay opinion does not foreclose the Plaintiff States from litigating their previous and new challenges to the IFC in this Court. That opinion is only a *preliminary* assessment of the merits, and thus it does not dictate how any court must rule in a final decision on the merits. *See Merrill*, 142 S. Ct. at 879 (Kavanaugh, J., concurring). The Supreme Court's well-established standard for granting a stay of injunction pending appeal requires showing only "*a fair prospect* that the Court would reverse," not a certainty. *Id.* at 880 (emphasis added).

Moreover, the Amended Complaint includes numerous claims that the Supreme Court's opinion did not address, including previously asserted claims and new claims that are based, in part, on facts that were not before the Supreme Court. For example, neither this Court nor the

5

Supreme Court has addressed any of the Plaintiff States' constitutional claims, and nothing in the Supreme Court's stay opinion casts any doubt on, or even alludes to, the merits of those claims. *See* Doc. 42, at ¶¶ 306–342 (raising constitutional claims); Doc. 28, at 7 & n.8 (declining "to needlessly reach [the] constitutional issues" that the States raised in their preliminary injunction motion because this Court determined that it would resolve that motion on alternative statutory grounds). This Court can—and should—address those issues now.

Furthermore, the Amended Complaint raises additional grounds to conclude that the IFC is arbitrary and capricious—arguments that this Court and the Supreme Court did not address. The Supreme Court considered only the "flaws [this Court] found in the Secretary's analysis" and concluded that they were not a basis upon which to find the mandate "arbitrary and capricious." *Biden*, 142 S. Ct. at 653–54. But the Amended Complaint raises new grounds to find that CMS acted arbitrarily and capriciously, which no court has yet addressed—arguing, for example, that the agency enacted a rule that entirely fails to account for changes in pandemic-related circumstances, even though CMS knew that changes would occur, and changes have been a mainstay of the pandemic. Doc. 42, at ¶ 245. When CMS issued the mandate, it knew that (1) new SARS-CoV-2 variants would continue to arise, *see* 86 Fed. Reg. at 61,584, (2) "Delta may be overtaken by other virus mutations," *id.* at 61,609; (3) new COVID-19 variants could change the trajectory of the pandemic, the risk of the virus, and the rationale for the mandate, *see id.* at 61,610 n.248; (4) the COVID-19 vaccines are less effective against certain variants, *see id.* at 61,565; and (5) there was a "possibility of new virus variants that reduce the effectiveness of currently authorized and approved vaccines," *id.* at 61,602. Despite knowing all this, CMS arbitrarily and capriciously created a rule that does not even attempt to adjust to the pandemic-related changes that it contemplated. Doc. 42, at ¶ 242. Subsequent events have brought this arbitrariness into sharp

focus, as the milder Omicron variant has now displaced Delta and the vaccines that CMS is currently mandating have proven ineffective at preventing transmission of Omicron (and may even be a *risk factor* for transmitting Omicron). *Id.* at ¶¶ 160–71; *see, e.g.*, Christian Holm Hansen et al., *Vaccine effectiveness against SARS-CoV-2 infection with the Omicron or Delta variants following a two-dose or booster BNT162b2 or mRNA-1273 vaccination series: A Danish cohort study*, medRxiv (Dec. 23, 2021), https://www.medrxiv.org/content/10.1101/2021.12.20.21267966v3.full-text (reporting data that vaccine effectiveness against Omicron infection becomes *negative* three months after vaccination). CMS's arbitrary and capricious selection of a rigid, inflexible mandate—in the face of an ever-changing pandemic—has resulted in a mandate that has become either useless or counterproductive in protecting patients in federally funded healthcare facilities from COVID-19 transmission. Because neither this Court nor the Supreme Court considered this argument, nothing prevents this Court from addressing it now.

Also, the Amended Complaint presents a changed-circumstances claim based on, among other things, the pandemic-altering shift of Omicron replacing Delta and the legal developments that have rendered unenforceable the other federal vaccine mandates. *See* Doc. 42, at ¶¶ 343–49. A vaccine mandate targeted at Delta is a Jurassic fossil in a world dominated by Omicron. That, too, is a claim that has not been before either this Court or the Supreme Court. Because the Plaintiff States have all these immediately available and unaddressed claims under the Amended Complaint, they would be prejudiced if they were prevented from pursuing them now.

Notably, various procedural avenues allow the proceedings before this Court to move quickly enough to afford meaningful relief to the Plaintiff States. One such option is that the States could move for preliminary injunction on various claims in the Amended Complaint and consolidate that motion with a trial on the merits under Fed. R. Civ. P. 65(a)(2). That avenue will move

the parties swiftly to a final judgment. *See Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 3603341, at *1-*2 (N.D. Tex. Aug. 13, 2021), *aff'd*, 20 F.4th 928 (5th Cir. 2021), *cert. granted*, 2022 WL 497412 (U.S. Feb. 18, 2022) (following similar procedure). And no issues concerning the administrative record should prevent the case from progressing expeditiously because Defendants have already produced that record as part of the now-dismissed litigation in *Texas v. Becerra*, No. 21-cv-00229-Z (N.D. Tex.), Doc. 30.

The Plaintiff States' current arguments in favor of lifting the stay are not foreclosed by their prior consent to Defendants' request to stay district court proceedings in December. That consent was based on an entirely different set of circumstances. Then, this Court's preliminary injunction barred application of the CMS vaccine mandate in the Plaintiff States. That is no longer the case. Because stay rulings "call for the exercise of judgment" that includes "weigh[ing] competing interests" under the circumstances, *Landis*, 299 U.S. at 254–55, the material procedural developments justify the States in requesting to lift the stay and proceed to final judgment.

Moreover, neither the Amended Complaint nor the lifting of the stay will interfere with or otherwise affect the Eighth Circuit appeal. The Amended Complaint includes the allegations in the original complaint alongside new allegations and claims. Lifting the stay will thus permit the parties and this Court to proceed toward final adjudication and judgment quicker than if the entire case is left on pause until the preliminary injunction appeal ends. This factor also weighs in favor of lifting the stay and permitting the district court proceedings to recommence.

2. On the flip side, Defendants cannot establish that lifting the stay on the district court proceedings will prejudice them. Because the preliminary injunction that is currently pending appeal is an interlocutory order, Defendants will still need to litigate all the Plaintiff States' claims—including those addressed in the Supreme Court's ruling and those beyond its scope—to

8

a final judgment on the merits. Nothing bars this Court from starting that process now. Indeed, "[a]n appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2962 (3d ed. 2021); *accord W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986) ("[T]he pendency of an interlocutory appeal from an order granting or denying a preliminary injunction does not wholly divest the District Court of jurisdiction over the entire case."). This means that during the interlocutory appeal, "the case may proceed to a trial on the merits." Wright & Miller, *supra*, at § 2962.

Requiring Defendants to start that process now (rather than after the interlocutory appeal ends) will not harm them. In fact, because the Plaintiff States have raised multiple claims and arguments in their Amended Complaint that this Court did not address in its preliminary injunction order, Defendants will necessarily be forced to defend against additional claims on remand. It does not prejudice Defendants to begin that process now.

3. For similar reasons, judicial economy is furthered by allowing the district court litigation to resume without further delay. As discussed above, the Amended Complaint includes claims that fall outside the Supreme Court's stay ruling. And regardless of how the preliminary injunction appeal is decided, this case will move forward toward a merits ruling in this Court. Thus, no matter what happens in the currently pending appeal, there will still be work left to do on remand. Starting that process now ensures the final resolution of this case will come sooner rather than later.

## CONCLUSION

Material circumstances have changed since this Court entered its stay of district court proceedings. Those changes establish that the Plaintiff States will be prejudiced unless this Court

9

lifts that stay and resumes proceedings. In contrast, Defendants will suffer no prejudice from lifting the stay, nor will the pending appeal be adversely affected in any way. As a result, this Court should grant the States' Motion to Lift the Stay of the District Court Proceedings.

Dated: February 23, 2022    Respectfully submitted,

**DOUGLAS J. PETERSON**  
**Attorney General of Nebraska**

*/s/ James A. Campbell*  
James A. Campbell*  
  *Solicitor General of Nebraska*  
Office of the Nebraska Attorney General  
2115 State Capitol  
Lincoln, NE 68509  
(402) 471-2682  
Jim.Campbell@nebraska.gov  
*Counsel for Plaintiffs*

**ERIC S. SCHMITT**  
**Attorney General of Missouri**

*/s/ Jesus A. Osete*  
Jesus A. Osete, #69267MO  
  *Deputy Attorney General of Missouri*  
D. John Sauer, #58721MO  
  *Solicitor General of Missouri*  
Maddie McMillian Green, #73724MO  
  *Assistant Attorney General for Special Litigation*  
Office of the Missouri Attorney General  
Post Office Box 899  
Jefferson City, MO 65102  
(573) 751-1800  
Jesus.Osete@ago.mo.gov  
*Counsel for Plaintiffs*

*Additional counsel on the following pages*

**LESLIE RUTLEDGE**
**Attorney General of Arkansas**
/s/ *Dylan L. Jacobs*
Dylan L. Jacobs
  *Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-2007
Dylan.Jacobs@arkansasag.gov
*Counsel for the State of Arkansas*

**JEFFREY S. THOMPSON**
Solicitor General
/s/ *Samuel P. Langholz*
Samuel P. Langholz
  *Assistant Solicitor General*
Office of the Iowa Attorney General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
jeffrey.thompson@ag.iowa.gov
sam.langholz@ag.iowa.gov
*Counsel for the State of Iowa*

**TREG R. TAYLOR**
**Attorney General of Alaska**
/s/ *Cori Mills*
Cori M. Mills
  *Deputy Attorney General of Alaska*
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99502
(907) 269-5100
Cori.Mills@alaska.gov
*Counsel for the State of Alaska*

**DEREK SCHMIDT**
**Attorney General of Kansas**
/s/ *Kurtis Wiard*
Kurtis Wiard
  *Assistant Solicitor General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Tel: (785) 296-2215
Fax: (785) 296-6296
E-mail: kurtis.wiard@ag.ks.gov
*Counsel for the State of Kansas*

**BRIDGET HILL**
**Wyoming Attorney General**
/s/ *Ryan Schelhaas*
Chief Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-5786
ryan.schelhaas@wyo.gov
*Counsel for the State of Wyoming*

**JASON R. RAVNSBORG**
**South Dakota Attorney General**
/s/ *David M. McVey*
David M. McVey
  *Assistant Attorney General*
1302 E. Highway 14, Suite 1
Pierre, SD  57501-8501
Phone: 605-773-3215
E-Mail: david.mcvey@state.sd.us
*Counsel for the State of South Dakota*

11

<div style="display: flex;">

<div>

**DREW H. WRIGLEY**
**Attorney General of North Dakota**
*/s/ Matthew A. Sagsveen*
Matthew A. Sagsveen
  *Solicitor General*
State Bar ID No. 05613
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
Telephone (701) 328-3640
Facsimile (701) 328-4300
masagsve@nd.gov
*Counsel for the State of North Dakota*

</div>

<div>

**JOHN M. FORMELLA**
**New Hampshire Attorney General**
*/s/ Anthony J. Galdieri*
Anthony J. Galdieri
  *Solicitor General*
NEW HAMPSHIRE DEPARTMENT OF JUSTICE
33 Capitol Street
Concord, NH 03301
Tel: (603) 271-3658
Anthony.J.Galdieri@doj.nh.gov
*Counsel for State of New Hampshire*

</div>

</div>

Case: 4:21-cv-01329-MTS   Doc. #:  44   Filed: 02/23/22   Page: 13 of 13 PageID #: 632

**CERTIFICATE OF SERVICE**

    I hereby certify that, on February 23, 2022, a true and correct copy of the foregoing and any attachments were filed electronically through the Court's CM/ECF system, to be served on counsel for all parties by operation of the Court's electronic filing system and to be served on those parties that have not appeared who will be served in accordance with the Federal Rules of Civil Procedure by mail or other means agreed to by the party.

                                                 /s/ *Jesus A. Osete*
                                                 Counsel for Plaintiffs

13