IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, JR., <br> in his official capacity as the President of the United States of America, *et al.*, <br><br> *Defendants*. | No.  4:21-cv-01329 |

**PLAINTIFF STATES' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO LIFT THE STAY OF THE DISTRICT COURT PROCEEDINGS**

Pursuant to E.D. Mo. R. 4.01(C), Plaintiffs, the States of Missouri, Nebraska, Arkansas, Kansas, Iowa, Wyoming, Alaska, South Dakota, North Dakota, and New Hampshire, submit this Reply Memorandum in Support of their Motion to Lift the Stay of the District Court Proceedings. Doc. 43.

**STANDARD OF REVIEW**

Defendants try two tactics to ratchet up the standard of review for the States' motion.  Both fail.  First, Defendants contend (at 5) that the States are really asking this Court to reconsider its order staying the district court proceedings.  Not so.  The primary case that Defendants rely on—*Destifanes v. Bricklayers Loc. #1 of Missouri Supplemental Pension Fund*, No. 4:20-CV-00750-NCC, 2021 WL 842552, at *2 (E.D. Mo. Mar. 5, 2021)—is nothing like this case.  There, the court treated the motion as a request for reconsideration because the plaintiff "assert[ed] that the Court made an error of law" in granting the original stay.  *Id.*  Here, however, the States do not argue that this Court made a mistake in entering the stay but that material changes in circumstances warrant lifting it.  Moreover, this Court's prior order left open the door for it to lift the stay. *See*

Doc. 40, at 2 (entering a stay "until otherwise ordered by the Court"). The States are simply requesting that be done now.

Second, Defendants assert (at 5) that the States' Amended Complaint is actually a supplemental complaint. They are mistaken again. A supplemental pleading addresses *only* "transaction[s], occurrence[s], or event[s] that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). But the vast majority of the Amended Complaint's allegations pertain to occurrences or events that happened before the filing of the original complaint. Even focusing on only the allegations not found in the original complaint, many of those address matters that occurred before this suit began. For example, the Amended Complaint added key information that CMS knew before the States filed this suit. *See* Doc. 42, ¶¶ 156-60. And the Amended Complaint included a number of new legal allegations regarding matters that happened before this suit began, *see id.* at ¶¶ 242, 245, and one new cause of action—a violation of the nondelegation doctrine—that rests entirely on facts occurring before the IFC was issued. *See id.* at ¶¶ 334-42. Because the Amended Complaint is filled with facts predating this suit and asserts claims and legal allegations resting on those facts, it is not a supplemental complaint.

Because the States' pleading is an amended complaint and not a supplemental complaint, considerations of futility are legally irrelevant. *See, e.g.*, *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("[T]he doctrine of futility only applies when the plaintiff seeks leave of court to amend and does not have a right to amend" under Fed. R. Civ. P. 15(a)(1) because the "plaintiff's right to amend once is absolute"). All of Defendants' arguments asserting futility (at 7-18) are, therefore, categorically irrelevant as a matter of law. In any event, the States' claims in the Amended Complaint are not futile. *See* Part II, *infra*.

2

## ARGUMENT

**I.     The Government's Pending Interlocutory Appeal of this Court's Preliminary Injunction Does Not Divest the Court of Jurisdiction to Proceed on the Amended Complaint.**

Contrary to the Government's argument (at 5-7), there is no jurisdictional bar to this Court entertaining the States' Amended Complaint while the interlocutory appeal is pending. Indeed, "[a]n appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2962 (3d ed. 2021) (cited in *Louisiana v. Becerra*, No. 21-30734, 2022 WL 445159, at *2 (5th Cir. Feb. 14, 2022) (per curiam)); *accord W. Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986) ("[T]he pendency of an interlocutory appeal from an order granting or denying a preliminary injunction does not wholly divest the District Court of jurisdiction over the entire case."). This means that during the interlocutory appeal, "the case may proceed to a trial on the merits." Wright & Miller, *supra*, at § 2962 & n.56 (collecting cases).

These same authorities were cited in the States' memorandum in support of their motion to lift the stay, *see* Doc. 44, at 9, but go unaddressed in the relevant section of the Government's opposition. *See* Doc. 47, at 5-7 (arguing lack of jurisdiction). Notably, none of the authorities the Government cites involved an interlocutory appeal of a preliminary injunction. *See id.*

The Government argues (at 6) that the States' "new" allegations in the Amended Complaint will "alter" the pending interlocutory appeal. But precisely because these allegations are new, even under the Government's theory, they can't possibly be before the Eighth Circuit. *Liddell v. Bd. of Educ.*, 73 F.3d 819, 822 (8th Cir. 1996). Therefore, the new allegations in the amended pleading do not alter the pending appeal.

3

Defendants also suggest (at 6) that this Court lacks jurisdiction because the States "intend to file a second motion for a preliminary injunction." That is not true. The States said that they "*could* move for preliminary injunction on various claims in the Amended Complaint and consolidate that motion with a trial on the merits" in order to move the case quickly to final judgment. Doc. 44, at 7 (emphasis added). Alternatively, the States could try the case on stipulated facts or submit expedited cross-motions for summary judgments. It is one of those latter two avenues that the States plan to pursue here. Nothing about the pending appeal bars this Court from following either of those procedural paths.

Another rule that Defendants mistakenly invoke—Fed. R. Civ. P. 62.1(a)—plainly has no application. Because this Court can entertain the merits of the States' claims while the interlocutory appeal is pending, this Court does not "lack[] authority" to allow further proceedings and thus does not need to seek an indicative ruling. Accordingly, the Court need not enter an indicative ruling if the Court were to lift the stay, contrary to the Government's contention (at 7).

For all these same reasons, the Government's claim (at 18) of prejudice from having to proceed during the pendency of the interlocutory appeal has no merit. *Cf. Ass'n of Equip. Manufacturers v. Burgum*, No. 1:17-CV-151, 2018 WL 1773145, at *1 (D.N.D. Mar. 5, 2018) (denying stay of preliminary injunction pending interlocutory appeal in the Eighth Circuit because "the outcome of the interlocutory appeal will not be outcome determinative of the entire case" and because "[w]hatever the outcome of the interlocutory appeal, the most expeditious resolution of the entire case is fostered by moving forward with" trial on the merits). If anything, not proceeding to trial on the merits soon would be prejudicial to the States. *See* Part II, *infra*.

**II.    The States' Claims in the Amended Complaint are Not Futile.**

As stated above, because the States' pleading is an amended complaint and not a supplemental complaint, the doctrine of futility is not applicable. All of Defendants' arguments asserting futility (at 7-18) are, therefore, categorically irrelevant as a matter of law. In any event, the States' claims are not futile. Nor would proceeding to trial on the merits be a waste of time. In fact, time is of the essence. The States moved (without opposition from the Government) to expedite the interlocutory appeal, which the Eighth Circuit granted. That motion asserted, with evidentiary support, that "[r]ural healthcare facilities are already closing and cutting services as they feel the Mandate's effect" after the Supreme Court's stay of the preliminary injunction. Mot. to Expedite, at 1, 7-10, *Missouri v. Biden*, No. 21-3725 (8th Cir. Mar. 2, 2022).

**A. The Supreme Court's stay opinion did not "resolve[] the merits."**

The Government argues (at 2) that the Supreme Court's stay opinion "resolved the merits" in Defendants' favor and they thus claim that the Amended Complaint is futile. *See id.* The Government is incorrect for at least two reasons.

*First*, the Supreme Court's "stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring). The "historic office" of a stay pending appeal "is to hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits." *Nken v. Holder*, 556 U.S. 418, 432 (2009). In granting a stay, the appellate court does not "*decide[]* the merits," as that would be "something that does not look remotely like a stay." *Id.* at 432-33.

To obtain a stay from the Supreme Court, the movant need only show a "fair prospect" that the injunction will be reversed—not a certainty that it *will* be reversed. *Hollingsworth v. Perry*,

5

558 U.S. 183, 190 (2010).  This "fair prospect" standard has been often reaffirmed.  *See, e.g., Merrill*, 142 S. Ct. at 879 (Kavanaugh, J., concurring); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020) (Roberts, C.J., concurring); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301, 1301 (2014) (Roberts, C.J.); *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers).

The "fair prospect" standard is part of "the well-settled standard for this form of relief." *Little*, 140 S. Ct. at 2616 (Roberts, C.J., concurring).  Nothing in the Supreme Court's stay opinion in this case purported to revise it.  On the contrary, both dissents cited this well-established standard, without dispute from the majority.  *Biden v. Missouri*, 142 S. Ct. 647, 655 (2022) (Thomas, J., dissenting); *id.* at 659 (Alito, J., dissenting).

*Second*, the Supreme Court did not consider or address multiple claims and arguments asserted in the Amended Complaint.  For example, the States' preliminary injunction motion challenged the Mandate as impermissibly pretextual, as failing to consider reliance interests, and as unconstitutional under the Spending Clause, the anti-commandeering doctrine, and the Tenth Amendment.  Doc. 9, at 19-20, 28-31.  The district court ruled in the States' favor on the first two issues, and declined to reach the constitutional issues.  Doc. 28, at 7 n.8, 20 n.24, & 21.  For its part, the Supreme Court did not address any of them.  *See Missouri*, 142 S. Ct. at 652-55.  In addition, the Amended Complaint added more arbitrary-and-capricious theories, *see* Doc. 42, ¶¶ 242–50, an unconstitutional-delegation claim, *see id.* at ¶¶ 334-42, and a changed-circumstances claim, *see id.* at ¶¶ 343-49—none of which any court has yet to consider.

The stay opinion follows the Supreme Court's universal rule that "we express no view on issues not addressed in this opinion."  *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 666 n.1 (2022).  When an issue "was not ... raised in the briefs or argument nor discussed in the opinion of the Court," then "the case is not a binding

6

precedent on this point." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996). The Eighth Circuit and this Court may consider issues not addressed by the Supreme Court on a clean slate.

When the Supreme Court intends to completely foreclose further litigation, it says so in unequivocal terms—as the Government well knows. *See Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam) ("The applicants not only have a substantial likelihood of success on the merits—it is difficult to imagine them losing."). That isn't the case here, even if the Government wants it to be. The stay opinion does not "resolve the merits" of this lawsuit. The Amended Complaint is thus not futile.

### B. The States' constitutional claims are not futile.

The Government next contends (at 11) that the Supreme Court "effectively resolved Plaintiffs' constitutional claims." Not so. As explained above, the Supreme Court's stay opinion did not settle the merits of any of the claims before it. Thus, the stay opinion did not "resolve" anything, much less the States' constitutional claims that went unaddressed in this Court's opinion granting the preliminary injunction.

Despite what the Government says, the Supreme Court's stay opinion did not address the States' constitutional claims. To be sure, the Supreme Court's stay opinion rejected the States' "remaining contentions in support of the injunctions entered below." *Missouri,* 142 S. Ct. at 653-54. But that only included rejection of the procedural and substantive challenges under the APA, and "[o]ther statutory objections to the rule" such as the state consultation requirement in 42 U.S.C. § 1395z, the regulatory impact analysis requirement in § 1302(b)(1), and the prohibition on the supervision or control of employees in § 1395. *See id.* Nowhere in its stay opinion did the

7

Supreme Court weigh in on the States' constitutional challenges. *Accord Louisiana v. Becerra*, 2022 WL 445159, at *3 ("Neither this court nor the Supreme Court made any rulings about the anti-commandeering doctrine."). The States' constitutional claims are thus not futile. *See* Br. for Appellees, *Missouri v. Biden*, No. 21-3725 (8th Cir. Mar. 1, 2022).

### C. *Auer* does not foreclose the States' claims relating to Omicron.

Defendants finally argue (at 12-13) that the States' legal claims relying on Omicron are futile because they are foreclosed by *Auer v. Robbins*, 519 U.S. 452 (1997). *Auer*, however, is not on point here. The plaintiffs there challenged a Department of Labor regulation interpreting the Fair Labor Standards Act (FLSA). That final agency rule was first enacted in 1954. *Id.* at 457. Though the Act originally excluded public-sector employees from its scope, in 1974 Congress extended the FLSA to cover those employees. *Id.* The plaintiffs argued that the Department acted arbitrarily and capriciously by "fail[ing] to revisit" the 1954 rule after 1974 to verify whether it "makes sense to apply [it] to the public sector" once Congress expanded the FLSA's scope. *Id.* at 458.

The Court rejected that arbitrary-and-capricious claim because the "proper procedure" was to seek relief from the agency—through "a petition to the agency for rulemaking." *Id.* at 459. Here, however, the States are not challenging a *final* agency rule that is decades old. Rather, they are challenging an *interim* final rule for which the agency is still reviewing comments and crafting the final rule. Given this very different posture, it would be nonsensical to suggest that the States must file a petition for agency rulemaking regarding an interim final rule that is still in the process of moving from interim to final status. Put differently, the agency is already engaged in rule-making, so it would be pointless to force the States to file a petition for agency rulemaking. *Auer* thus does not control here.

8

More relevant than *Auer* are cases like *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962), and *American Optometric Association v. FTC*, 626 F.2d 896 (D.C. Cir. 1980). In *Burlington*, the Supreme Court held that the lower court should not have affirmed the challenged agency action. 371 U.S. at 172. Key "intervening facts" that occurred during the lawsuit challenging that action but before the lower court ruled "so changed the complexion of the case that ... the reviewing equity court, in the exercise of its sound discretion, should not have affirmed the [agency] order." *Id.* Rather, the lower court "should have vacated [the agency order] and remanded it to the Commission for further consideration in the light of the changed conditions." *Id.* This Court should do the same here.

And in *American Optometric Association*, the court "suspended the operation" of a Federal Trade Commission rule based on a change in circumstances that occurred after the rule was promulgated but before judicial review was completed. 626 F.2d at 917. The court noted that a long line of cases favors suspending agency action and remanding to the agency "where there has been a change in circumstances, subsequent to administrative decision and prior to court decision, that is not merely 'material' but rises to the level of a change in 'core' circumstances, the kind of change that goes to the very heart of the case." *Id.* at 907 (citation omitted). The court held that suspending the rule was warranted there because "basic information on which the Commission relied has changed" and "those changes have created circumstances sufficiently different" that might justify a "different rule[]." *Id.* Because, as the Amended Complaint alleges, Omicron drastically changed the trajectory of COVID-19 in the United States and CMS did not consider that development in making its rule, *see* Doc. 42, ¶¶ 160-72, this Court should similarly suspend the vaccine mandate and remand to the agency for reconsideration. The States thus have a strong likelihood of prevailing under cases like *Burlington* and *American Optometric Association*.

Defendants also insist (at 14) that Omicron does not present a change in core circumstances, arguing that the vaccines are effective against Omicron because "the vaccinated are significantly less likely to transmit Omicron ... than are the unvaccinated." But Defendants do not deny that the vaccine manufacturers admit the existing vaccines are inadequate to protect against Omicron, *see* Doc. 42, ¶¶ 169-70, that studies have shown the vaccines without boosters are ineffective against Omicron transmission, *see id.* at ¶¶ 166, 171, or that studies have shown vaccine effectiveness against Omicron becomes negative a few months after vaccination, *see* Christian Holm Hansen et al., *Vaccine effectiveness against SARS-CoV-2 infection with the Omicron or Delta variants following a two-dose or booster BNT162b2 or mRNA-1273 vaccination series: A Danish cohort study*, medRxiv (Dec. 23, 2021), https://www.medrxiv.org/content/10.1101/2021.12.20.21267966v3.full-text.

Rather, Defendants offer CDC data that admittedly suffers from significant limitations. For example, the primary report that Defendants cite concerning Omicron transmission was derived from a "convenience sample" of voluntary participants, rested on a "small sample size," "relied primarily on self-reported data" (including about vaccination status), and produced results that cannot be "generaliz[ed]." Julia M. Baker et al., *SARS-CoV-2 B.1.1.529 (Omicron) Variant Transmission Within Households — Four U.S. Jurisdictions, November 2021–February 2022*, 71 Morbidity & Mortality Weekly Report 341 (Mar. 4, 2022), https://perma.cc/74S8-AW47. The CDC's self-serving data does not remotely establish that the States' claims are futile.

## CONCLUSION

For the foregoing reasons, and those in the States' memorandum in support of their motion to lift the stay, Doc. 44, the Court should grant the States' motion to lift the stay.

10

Dated: March 21, 2022

Respectfully submitted,

**DOUGLAS J. PETERSON**
**Attorney General of Nebraska**

/s/ *James A. Campbell*
James A. Campbell
  *Solicitor General of Nebraska*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
Jim.Campbell@nebraska.gov
*Counsel for Plaintiffs*

**ERIC S. SCHMITT**
**Attorney General of Missouri**

/s/ *Jesus A. Osete*
Jesus A. Osete, #69267MO
  *Deputy Attorney General of Missouri*
D. John Sauer, #58721MO
  *Solicitor General of Missouri*
Maddie McMillian Green, #73724MO
  *Assistant Attorney General for Special Litigation*
Office of the Missouri Attorney General
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
Jesus.Osete@ago.mo.gov
*Counsel for Plaintiffs*

*Additional counsel listed below*

**LESLIE RUTLEDGE**
**Attorney General of Arkansas**

/s/ *Dylan L. Jacobs*
Dylan L. Jacobs
  *Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-2007
Dylan.Jacobs@arkansasag.gov
*Counsel for the State of Arkansas*

**DEREK SCHMIDT**
**Attorney General of Kansas**

/s/ *Kurtis Wiard*
Kurtis Wiard
  *Assistant Solicitor General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Tel: (785) 296-2215
Fax: (785) 296-6296
E-mail: kurtis.wiard@ag.ks.gov
*Counsel for the State of Kansas*

| | |
|---|---|
| **JEFFREY S. THOMPSON**<br>Solicitor General<br>/s/ *Samuel P. Langholz*<br>Samuel P. Langholz<br>  *Assistant Solicitor General*<br>Office of the Iowa Attorney General<br>1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>(515) 281-5164<br>jeffrey.thompson@ag.iowa.gov<br>sam.langholz@ag.iowa.gov<br>*Counsel for the State of Iowa* | **BRIDGET HILL**<br>**Wyoming Attorney General**<br>/s/ *Ryan Schelhaas*<br>Chief Deputy Attorney General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, WY 82002<br>Telephone: (307) 777-5786<br>ryan.schelhaas@wyo.gov<br>*Counsel for the State of Wyoming* |
| **TREG R. TAYLOR**<br>**Attorney General of Alaska**<br>/s/ *Cori Mills*<br>Cori M. Mills<br>  *Deputy Attorney General of Alaska*<br>Alaska Department of Law<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, AK 99502<br>(907) 269-5100<br>Cori.Mills@alaska.gov<br>*Counsel for the State of Alaska* | **JASON R. RAVNSBORG**<br>**South Dakota Attorney General**<br>/s/ *David M. McVey*<br>David M. McVey<br>  *Assistant Attorney General*<br>1302 E. Highway 14, Suite 1<br>Pierre, SD  57501-8501<br>Phone: 605-773-3215<br>E-Mail: david.mcvey@state.sd.us<br>*Counsel for the State of South Dakota* |
| **DREW H. WRIGLEY**<br>**Attorney General of North Dakota**<br>/s/ *Matthew A. Sagsveen*<br>Matthew A. Sagsveen<br>  *Solicitor General*<br>State Bar ID No. 05613<br>Office of Attorney General<br>500 North 9th Street<br>Bismarck, ND 58501-4509<br>Telephone (701) 328-3640<br>Facsimile (701) 328-4300<br>masagsve@nd.gov<br>*Counsel for the State of North Dakota* | **JOHN M. FORMELLA**<br>**New Hampshire Attorney General**<br>/s/ *Anthony J. Galdieri*<br>Anthony J. Galdieri<br>  *Solicitor General*<br>NEW HAMPSHIRE DEPARTMENT OF JUSTICE<br>33 Capitol Street<br>Concord, NH 03301<br>Tel: (603) 271-3658<br>Anthony.J.Galdieri@doj.nh.gov<br>*Counsel for State of New Hampshire* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on March 21, 2022, a true and correct copy of the foregoing and any attachments were filed electronically through the Court's CM/ECF system, to be served on counsel for all parties by operation of the Court's electronic filing system and to be served on those parties that have not appeared who will be served in accordance with the Federal Rules of Civil Procedure by mail or other means agreed to by the party.

/s/ *Jesus A. Osete*
Counsel for Plaintiffs
