IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 4:21-cv-1329 |
| JOSEPH R. BIDEN, JR., *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**

**INTRODUCTION**

The Supreme Court effectively resolved this case nine months ago. In *Biden v. Missouri*, 142 S. Ct. 647 (2022), the Court held that the vaccination rule at issue here is within the Secretary's statutory authority, and it explicitly rejected Plaintiffs' claims that the rule is arbitrary and capricious, procedurally invalid, and contrary to law. Plaintiffs' constitutional challenges were briefed and argued to the Supreme Court, and that Court implicitly rejected those claims as well. In light of the Supreme Court's decision, the Eighth Circuit has reversed this Court's preliminary injunction order, and the Supreme Court has denied the Plaintiffs' petition for a writ of certiorari. Nothing now remains of this case, and the Complaint should be dismissed.

**BACKGROUND**

**I.    Prior proceedings of this litigation.**

After this Court issued a preliminary injunction against the enforcement of the vaccination rule, ECF No. 28, Defendants filed a notice of appeal, ECF No. 29. Both this Court and the Eighth Circuit denied motions for a stay of the injunction pending appeal. ECF Nos. 35, 38. Defendants then filed applications in the Supreme Court for a stay of this Court's preliminary injunction and of a preliminary injunction entered against the same rule by the Western District of Louisiana.

In their briefing before the Supreme Court, Plaintiffs contended that the Secretary lacked statutory authority to issue the vaccination rule, *see* Resp. to Appl. for a Stay at 10, *Biden v. Missouri*, No. 21A240 (U.S. Dec. 30, 2021), and that the relevant statutes should be read narrowly because a broader reading would approach the limits of Congress's Spending Clause power, *id.* at 24. They further contended that the rule violated 42 U.S.C. § 1395 insofar as it sought to control health care facilities' personnel decisions. *Id.* at 18.

Plaintiffs also argued that the vaccination rule was arbitrary and capricious because, in their view, the Secretary had failed to consider that the rule might exacerbate shortages in the health care workforce; the rule had an irrationally broad scope; the Secretary had arbitrarily rejected various alternatives; the rationale for the rule was pretextual; and the Secretary had failed to consider the reliance interests of various parties, including rural health care providers, in the status quo ante. *Id.* at

25-31. In addition, Plaintiffs asserted that the Secretary violated the procedural requirements of the Administrative Procedure Act and the Medicare statute by issuing the rule without first providing for a period of notice and comment. *Id.* at 32.

On January 13, 2022, the Supreme Court granted the stay applications and, as explained below, effectively resolved the merits of this case in Defendants' favor. *Biden v. Missouri*, 142 S. Ct. 647 (2022).[1] In light of the Supreme Court's decision, the Eighth Circuit vacated the preliminary injunction in this case, and it remanded the case to this Court for further proceedings. ECF No. 52. Plaintiffs filed a petition for a writ of certiorari. The Supreme Court denied the petition, without noted dissent, on October 3, 2022. *Missouri v. Biden*, --- S. Ct. ---, No. 21-1463, 2022 WL 4651648 (U.S. Oct. 3, 2022) (mem.).

## ARGUMENT

**THE SUPREME COURT'S DECISION EFFECTIVELY FORECLOSES THE CLAIMS IN PLAINTIFFS' COMPLAINT.**

In *Biden v. Missouri*, 142 S. Ct. 647 (2022), the Supreme Court stayed this Court's preliminary injunction. In so ruling, the Court effectively resolved each of the issues presented in the Complaint in Defendants' favor.

**I.    The Supreme Court Has Decided the Statutory and Procedural Claims in Defendants' Favor.**

The Supreme Court held, *first*, that "the Secretary's rule falls within the authorities that Congress has conferred upon him." *Id.* at 652. The Secretary has the "general statutory authority to promulgate regulations 'as may be necessary to the efficient administration of the functions with which

---

[1] Thereafter, plaintiffs in other cases voluntarily dismissed their challenges to the vaccination rule. Texas moved to dismiss its complaint "in light of the Supreme Court's ruling in *Biden v. Missouri*." Pls.' Mot. for Dismissal, *Texas v. Becerra*, No. 21-cv-00229-Z, ECF No. 63 (N.D. Tex. Jan. 18, 2022). The court granted the motion, citing the Supreme Court's decision as good cause to do so. Order, *Texas v. Becerra*, No. 21-cv-00229-Z, ECF No. 66 (N.D. Tex. Jan. 19, 2022). Florida likewise dismissed its complaint, "[g]iven the United States Supreme Court's decision in *Biden v. Missouri*." Notice of Dismissal, *Florida v. U.S. Dep't of Health & Human Servs.*, No. 3:21-cv-2722-MCR-HTC, ECF No. 26 (N.D. Fla. Feb. 4, 2022); *see also Griner v. Biden*, No. 2:22-CV-149-DAK-DBP, 2022 WL 7501065, at *9 (D. Utah, Oct. 13, 2022) (district court dismissing claim that vaccination rule violated due process rights, and reiterating the Supreme Court's holding that "the Secretary reasonably explained his decisions").

[he] is charged.'" *Id.* at 650 (quoting 42 U.S.C. § 1302(a)). "One such function—perhaps the most basic, given the Department's core mission—is to ensure that the healthcare providers who care for Medicare and Medicaid patients protect their patients' health and safety." *Id.* "To that end, Congress authorized the Secretary to promulgate, as a condition of a facility's participation in the programs, such 'requirements as [he] finds necessary in the interest of the health and safety of individuals who are furnished services in the institution.'" *Id.* (quoting 42 U.S.C. § 1395x(e)(9)). The Court noted that, "[r]elying on these authorities, the Secretary has established long lists of detailed conditions with which facilities must comply to be eligible to receive Medicare and Medicaid funds." *Id.* "Such conditions have long included a requirement that certain providers maintain and enforce an 'infection prevention and control program designed . . . to help prevent the development and transmission of communicable diseases and infections.'" *Id.* at 650-51 (quoting 42 C.F.R. § 483.80).

The Court cited the Secretary's findings that the rule "will substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients," and that "a vaccine mandate is 'necessary to promote and protect patient health and safety' in the face of the ongoing pandemic." *Id.* at 652 (citing Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination**,** 86 Fed. Reg. 61,555, 61,557-58, 61,613 (Nov. 5, 2021)). The Court concluded that

> [t]he rule thus fits neatly within the language of the statute. After all, ensuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the "very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19."

*Id.* (quoting *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1288 (11th Cir. 2021)). The vaccination rule thus "is a straightforward and predictable example of the 'health and safety' regulations that Congress has authorized the Secretary to impose." *Id.* at 653.

The Supreme Court also rejected the argument that the rule runs afoul of the directive in 42 U.S.C. § 1395 that federal officials may not "exercise any supervision or control over the ... manner in which medical services are provided, or over the selection [or] tenure ... of any officer or employee of" any facility. *Biden v. Missouri*, 142 S. Ct. at 654 (alterations in original). The Court observed that

3

Plaintiffs' "reading of section 1395 would mean that nearly every condition of participation the Secretary has long insisted upon is unlawful." *Id.*

*Second*, the Court held that the Secretary had good cause to issue the vaccination rule as an interim final rule ("IFR"), because "the Secretary's finding that accelerated promulgation of the rule in advance of the winter flu season would significantly reduce COVID-19 infections, hospitalizations, and deaths constitutes the 'something specific,' required to forgo notice and comment." *Id.* (citations omitted). Further, the Court rejected the argument that "the two months the agency took to prepare a 73-page rule constitutes 'delay' inconsistent with the Secretary's finding of good cause." *Id.*

*Third*, the Supreme Court "agree[d] with the Secretary that he was not required to 'consult with appropriate State agencies,' 42 U.S.C. § 1395z, in advance of issuing the [IFR]. Consistent with the existence of the good cause exception, which was properly invoked here, consultation during the deferred notice-and-comment period is permissible." *Id.*

*Fourth*, the Court "similarly concur[red] with the Secretary that he need not prepare a regulatory impact analysis discussing a rule's effect on small rural hospitals when he acts through an interim final rule; that requirement applies only where the Secretary proceeds on the basis of a 'notice of proposed rulemaking,' followed by a 'final version of [the] rule.'" *Id.* (quoting 42 U.S.C. § 1302(b)(1), (b)(2)).

*Fifth*, the Court held that the IFR is not arbitrary and capricious.

> Given the rulemaking record, it cannot be maintained that the Secretary failed to "examine the relevant data and articulate a satisfactory explanation for" his decisions to (1) impose the vaccine mandate instead of a testing mandate; (2) require vaccination of employees with "natural immunity" from prior COVID-19 illness; and (3) depart from the agency's prior approach of merely encouraging vaccination.

*Id.* at 653-54. The Court also disagreed "that the Secretary 'entirely failed to consider' that the rule might cause staffing shortages, including in rural areas." *Id.* at 654 (quotation omitted). And it rejected the lower courts' criticism of other parts of "the Secretary's analysis, particularly concerning the nature of the data relied upon," *id.*, noting that the courts' role "is to 'simply ensur[e] that the agency has acted within a zone of reasonableness.'" *Id.* (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)).

*Finally*, the Court held that it "disagree[d] with respondents' remaining contentions in support of the injunctions entered below." *Id.* at 653. These remaining contentions included several constitutional arguments, as explained more fully below.

The decision effectively forecloses each claim in Plaintiffs' Complaint. Plaintiffs contend that the rule is arbitrary and capricious (Count I); that the Secretary lacked statutory authority for the rule (Count II); that the Secretary lacked good cause to issue the rule without notice and comment (Counts III, IV); that 42 U.S.C. §§ 1302 and 1395z required the Secretary to prepare a regulatory impact analysis and to consult with state agencies before issuing the rule (Counts V, VI); and that the rule is unconstitutional under the Spending Clause, the anti-commandeering doctrine, the Tenth Amendment, or the nondelegation doctrine (Counts VII-IX). The Supreme Court flatly rejected Plaintiffs' statutory and procedural claims. *Biden v. Missouri*, 142 S. Ct. at 652-54. As to Plaintiffs' constitutional claims, the Supreme Court's rejection of each of "the respondents' remaining contentions," *id.* at 653, forecloses these claims as well.

In prior briefing in this Court, Plaintiffs suggested that the Supreme Court's decision is not binding, citing to Justice Kavanaugh's concurrence in *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (mem.). *See* Pls.' Mem. in Supp. of Mot. to Lift Stay at 3, ECF No. 44. In *Merrill*, the majority issued a stay of a lower court's injunctive order without an opinion explaining its reasoning, and Justice Kavanaugh concurred to note that he did not view that order as a decision on the merits. The Supreme Court may decide a stay application without finally deciding the merits of legal questions. But that is not what happened in *Biden v. Missouri*. In this case, the Court squarely decided the merits of Plaintiffs' claims in an opinion issued after holding oral argument on the stay applications, and it did not qualify those holdings in any way. *See Biden v. Missouri*, 142 S. Ct. at 652-54. That decision is binding on this Court, just as it is on any other lower court that would hear a similar challenge.

Plaintiffs may contend, as they did in their recently-denied petition for a writ of certiorari, that the Supreme Court has not expressly resolved all of their procedural challenges to the vaccination rule. In their petition, they argued that *Biden v. Missouri* left open their claims that the Secretary had purportedly failed to consider certain "reliance interests," and that the rationale for the vaccination

5

rule was, in their view, pretextual. Pet. for Writ of Cert. at 25-30, *Missouri v. Biden*, No. 21-1463 (U.S. May 12, 2022). But Plaintiffs presented these same arguments to the Supreme Court in the proceedings on the stay application, *see* Resp. to Appl. for a Stay at 27, *Biden v. Missouri*, No. 21A240 (U.S. Dec. 30, 2021), and the Supreme Court disposed of them in January without extended comment; *see Biden v. Missouri*, 142 S. Ct. at 653 (holding that the Court "disagree[d] with respondents' remaining contentions in support of the injunctions entered below"). This holding is binding on this Court with respect to all of Plaintiffs' "remaining contentions."[2] *Biden v. Missouri,* 142 S. Ct. at 653.

## II. The Supreme Court's Decision Effectively Resolves Plaintiffs' Constitutional Claims in Defendants' Favor.

Plaintiffs fare no better with their attempt to reassert their constitutional claims. Those claims were briefed to the Supreme Court. Although this Court did not rely on Plaintiffs' constitutional claims in issuing its preliminary injunction, the district court in the *Louisiana* case did, and the *Louisiana* plaintiffs argued to the Supreme Court that the rule exceeded Congress's Spending Clause power, was impermissibly coercive, and was unconstitutional under the nondelegation doctrine. *See* Resp. to Appl. for a Stay Pending Appeal at 1, 23-27, *Becerra v. Louisiana*, Nos. 21A240, 21A241 (U.S. Dec. 30, 2021). The *Louisiana* plaintiffs argued that, at a minimum, the Supreme Court should interpret the statute to avoid the asserted constitutional problems. *See id.* at 27. The Supreme Court, indicating that it "disagree[d] with respondents' remaining contentions in support of the injunctions entered below," *Biden v. Missouri*, 142 S. Ct. at 653, ruled in the Secretary's favor and interpreted the statute to authorize the rule. Accordingly, the Court effectively resolved Plaintiffs' constitutional claims, and this renders futile any attempt to revive those same arguments. *See Thompson v. Comm'r*, 821 F.3d 1008, 1011 (8th

---

[2] In any event, these claims lack merit. Plaintiffs' claim with regard to "reliance interests" rests on the premise that the Secretary previously had a policy opposing staff vaccination requirements; no such policy existed. The agency had simply declined to adopt such a requirement at earlier stages of the pandemic and then reasonably changed course for reasons the Secretary fully explained. *See* 86 Fed. Reg. at 61,568. Likewise, Plaintiffs fail to identify any "significant mismatch" between the Secretary's decision and the rationale he offered for it. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575 (2019); *see also Biden v. Texas*, 142 S. Ct. 2528, 2546-47 (2022) (requiring "an accumulation of 'unusual circumstances'" to demonstrate such a mismatch (quoting *Dep't of Com.*, 142 S. Ct. at 2575)). To the contrary, the Secretary forthrightly acknowledged that the rule would protect other members of the public in addition to patients. *See* 86 Fed. Reg. at 61,612. But those salutary effects of the rule are not evidence of pretext.

Cir. 2016) (law of the case doctrine establishes that "every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined").

It is unsurprising that the Supreme Court disposed of the constitutional claims so easily. "Congress has authority under the Spending Clause to appropriate federal moneys to promote the general welfare" and "to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare." *Sabri v. United States*, 541 U.S. 600, 605 (2004) (citation omitted). Congress's power to impose conditions on federal funds applies regardless of whether Congress legislates "in an area historically of state concern." *Id.* at 608 n.*. Because these conditions on federal funds are "supported by affirmative constitutional grants of power to Congress [under the Spending Clause], [they are] not inconsistent with the Tenth Amendment." *New York v. United States*, 505 U.S. 144, 173 (1992).

The Supreme Court's decision also effectively forecloses Plaintiffs' assertion that they lacked adequate notice that the Secretary might impose a funding condition like the vaccination rule. The Court explained that the rule "is not a surprising one." *Biden v. Missouri*, 142 S. Ct. at 653. The Secretary "routinely imposes conditions of participation that relate to the qualifications and duties of healthcare workers themselves," and "[v]accination requirements are a common feature of the provision of healthcare in America," *id.* Plaintiffs made no attempt to square their Spending Clause argument with the Secretary's "longstanding litany of health-related participation conditions," the validity of which Plaintiffs did not contest. *Id.* The Supreme Court's conclusion that the rule "is a straightforward and predictable example of the 'health and safety' regulations that Congress has authorized the Secretary to impose," *id.*, likewise effectively forecloses any contention that Congress's grant of these authorities to the Secretary poses any issue under the non-delegation doctrine. *See Bhatti v. FHFA*, 15 F.4th 848, 854 (8th Cir. 2021).

Nor may Plaintiffs avoid the Supreme Court's decision by recasting their "coercion" theory as an "anti-commandeering" claim. There is no meaningful difference between those allegations. Because the Court upheld the vaccine rule as a valid condition on federal funds, a lower court could not deem the rule to be an impermissible "commandeering" of state-run facilities. Valid conditions on the

receipt of federal funds do not constitute commandeering. *See New York v. United States*, 505 U.S. at 167, 173 (contrasting funding conditions with commandeering). Moreover, the vaccination rule imposes the same conditions on health care facilities that participate in the Medicare or Medicaid programs, no matter whether those facilities are privately-run or State-run. The Secretary did not run afoul of the anti-commandeering principle by imposing these conditions on equal terms. *See Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018) ("The anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage.").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for failure to state a claim.

Dated: November 2, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Michael Drezner*
MICHAEL L. DREZNER
Bar No. 83836(VA)
Trial Attorney

JULIE STRAUS HARRIS
Bar No. 1021298(DC)
Senior Trial Counsel

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 514-4505
Fax: (202) 616-8470
Email: Michael.L.Drezner@usdoj.gov

*Attorneys for Defendants*